IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01948-PSF-PAC

MARKWEST HYDROCARBON, INC.;
MARKWEST ENERGY PARTNERS, L.P.; and
MARKWEST ENERGY APPALACHIA, L.L.C.,

    Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY;
BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA;
ARCH INSURANCE COMPANY; and
ACE AMERICAN INSURANCE COMPANY,

    Defendants.

## ORDER ON DEFENDANTS' OBJECTIONS TO ORDER OF SPECIAL MASTER

This matter comes before the Court on Defendants' Objections to Special Master's Order (Dkt. # 89), filed on January 30, 2007. Plaintiffs Markwest Hydrocarbon, Inc., Markwest Energy Partners, L.P., and Markwest Energy Appalachia, L.L.C. (collectively "Markwest") filed a response on February 20, 2007 (Dkt. # 108), and defendants replied on February 23, 2007 (Dkt. # 110). Having reviewed the Special Master's Order, the parties' arguments, the record, and the applicable law, the Court enters the following Order.

**I.    BACKGROUND**

In this insurance coverage dispute, plaintiffs seek damages and declaratory relief for breach of contract arising out of defendants' failure to compensate plaintiffs

under an "all risks" insurance policy for losses suffered after an explosion and fire on plaintiffs' Appalachia Liquids Pipeline on November 8, 2004.  The insurance coverage sought exceeds $7.1 million, and plaintiffs also seek damages resulting from defendants' refusal to pay, allowable interest, and attorneys' fees.  Defendants claim that plaintiffs' insurance policy does not cover the losses, as the policy contains exclusions precluding such coverage.

The current discovery dispute stems from two motions to compel filed by plaintiffs.  Plaintiffs filed a Motion to Compel Rimkus Documents for *In Camera* Review on September 11, 2006 (Dkt. # 52), requesting that the Court order defendants to produce to the Court for an *in camera* review documents from Rimkus Consulting Group ("Rimkus"), an engineering firm hired by defendants' outside claims adjuster to investigate the pipeline explosion.  On November 3, 2006, plaintiffs filed a Supplemental Motion to Compel and Brief in Support (Dkt. # 64), requesting an order compelling defendants to produce:  (1) the documents that had been submitted to the Court *in camera*; (2) the Rimkus documents that had been withheld from the Court's *in camera* review; (3) all communications between defendants' counsel and defendants, Rimkus, and/or GAB Robins (defendants' outside claims adjuster) prior to August 31, 2005, the date plaintiffs' claim was denied; and (4) answers to deposition questions involving non-privileged information concerning the adjustment of the insurance claim at issue, which certain witnesses had been instructed not to answer.  On December 15, 2006, the Court appointed a Special Master to hear and determine all discovery disputes, including the pending motions to compel (Dkt. # 75).

## II.     THE SPECIAL MASTER'S ORDER

The Special Master issued the Order that is the subject of defendants' objections on January 10, 2007 (Dkt, # 83). As defendants have not objected to the entire order, only those portions to which defendants have objected are discussed. The Special Master did not examine the documents that had been submitted *in camera* because "a substantial number thereof [were] dealt with by [the] Order." Sp. Master's Order at 1. The Special Master first ordered defendants to produce all correspondence prior to August 31, 2005, the date plaintiffs' claim was denied. Relying on *National Farmers Union v. District Court*, 718 P.2d 1044 (Colo. 1986), the Special Master held that such documents were not prepared in anticipation of litigation and thus do not constitute privileged work product. Sp. Master's Order at 2. The Special Master also noted that "it appears that counsel for Defendants was or may have been acting as a claims adjuster. Indeed, it appears that content of the report or factual opinion which was the basis for the denial of the claim was modified as a result of communication by counsel." *Id.* Thus, relying on the *National Farmers* case cited above, the Special Master held that, to the extent information contained in communications from an attorney related to the factual investigation, it was not legal advice and is not protected by the attorney-client privilege. *Id.* As to the documents dated after August 31, 2005, the Special Master ordered that those involving adjustment of the claim or factual information other than trial strategy or legal advice must be produced, and that defense counsel could submit *in camera* those documents believed to contain legal advice. *Id.*

3

Finally, the Special Master addressed plaintiffs' enumeration of certain deposition questions that elicited instructions from defense counsel not to answer based on the attorney-client or work-product privilege. The Special Master held that, while questions which ask for the content of any communication with counsel need not be answered, questions related to the existence of communications or the fact of involvement of an attorney, such as the description of work performed by an attorney or the fact that a meeting or communication took place, are not privileged. *Id.* at 3. In addition, the Special Master held that any questions aimed at determining whether counsel's communications involved factual issues as opposed to legal advice—which is key for determining whether they are privileged—should be answered, along with questions regarding the actual communications to the extent they relate to counsel's involvement in the factual determinations underlying the coverage decision. *Id.* at 4. The Special Master concluded: "Counsel for Defendants shall permit the depositions of persons involved in the factual determinations leading to the opinion regarding causation and permit answers to the deposition questions limited as hereinabove outlined." *Id.*

### III.  DEFENDANTS' OBJECTIONS

Defendants have apparently produced a number of documents in accordance with the Special Master's Order. Def.'s Obj. at 3. However, defendants have provided a privilege log referencing 47 documents that it claims are "clearly attorney-client privileged" notwithstanding the Special Master's Order, and request that the Court review those documents *in camera* to determine whether they are privileged. *Id.* at 4.

Defendants object to the Special Master's factual determinations that "counsel for defendants was or may have been acting as a claims adjuster" and that "content of the report or factual opinion which was the basis for denial of the claim was modified as a result of communication by counsel." *Id.* at 2.  Defendants also object to the Special Master's legal conclusion that all communications between an insurance company and its attorney prior to the date of denial of the claim cannot be protected by either the attorney-client or the work-product privilege.  *Id.*

Finally, defendants object to any additional depositions of persons who were involved in the coverage decisions, as all relevant witnesses have been deposed extensively by plaintiffs.  *Id.* at 22.  To the extent additional depositions are permitted, defendants request that plaintiffs be required to specify the topics that they believe they did not have the opportunity to explore during previous depositions.  *Id.* at 22-23.

**IV.    ANALYSIS**

The Court reviews *de novo* the Special Master's factual findings and legal conclusions.  F.R.Civ.P. 53(g)(3), (4).

    **A.    Documents on Defendants' Privilege Log**

The first issue is whether the 43 documents on defendants' privilege log reflecting communications that were made prior to August 31, 2005 are not protected by either the attorney-client or work-product privilege solely because they were made before the date on which plaintiffs' claim was denied.  In *National Farmers Union v. District Court*, cited and relied on by the Special Master, the Colorado Supreme Court examined whether a memorandum, which was prepared by an insurance company's

5

outside counsel to inform the company's general counsel of the results of an investigation as to the facts regarding issuance of the policy and conclusions regarding whether a claim under the policy should be paid, was protected by the attorney-client and work-product privileges. *National Farmers*, 718 P.2d at 1045-46. With regard to the work-product privilege, the Court held that the memorandum, which was prepared before the insurer denied the claim, had not been prepared in anticipation of litigation because until the insurer decided to deny the claim, there was no indication that litigation was imminent. *Id.* at 1048. In addition, the fact that attorneys had performed the factual investigation underlying the coverage decision did not transform the memorandum from an ordinary business record into a work-product document. *Id.*

The Court then examined whether the portion of the memorandum that the insurer had been compelled to produce was protected by the attorney-client privilege. The Court concluded that the substance of the memorandum indicated that "the attorneys were acting more in the role of claims investigators than legal counsel" and that "the dominant purpose of the interviews [reflected in the memo] was to provide the company with the factual circumstances underlying the issuance of the policy." *Id.* at 1049. Accordingly, the Court held that the portion of the memorandum ordered produced by the district court was not privileged because it contained the results of a factual investigation rather than legal advice. *Id.*

Under *National Farmers*, then, the date on which the documents in question were prepared is relevant to whether they constitute work product, but does not affect whether they are protected by the attorney-client privilege. Thus, defendants need only

produce the documents dated prior to August 31, 2005 if they contain factual information other than trial strategy or legal advice, and *in camera* review of those documents, as well as the documents dated after August 31, 2005, is appropriate. Defendants complain of the Special Master's conclusions regarding whether defendants' counsel may have been acting as a claims adjuster or may have been influential in modifying the factual report upon which denial of the claim was based. Def.'s Obj. at 2. However, any concerns defendants may have over those findings will presumably be allayed by an *in camera* review of the documents, after which the Special Master can make a determination as to which of the documents, if any, constitute attorney-client privileged communications. Indeed, *in camera* review of the documents in defendants' privilege log is exactly the relief defendants request. *Id.* at 23.

Plaintiffs contend that 33 of the 47 documents were disclosed to third parties, namely, the outside adjusters hired to investigate plaintiffs' claim, and thus any privilege has been waived. *See e.g. United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989) (disclosure to third party waives attorney-client privilege). However, other district courts have concluded that an independent adjuster is an agent of an insurer and that communications with the adjuster are therefore protected by the attorney-client privilege. *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318, 2006 WL 3149362, at *15 (D. Nev. Nov. 1, 2006) ("The Court sees no rational distinction between applying the attorney-client privilege to confidential communications between the insurer's counsel and its claims employee, . . . but

refusing to apply the privilege to counsel's confidential communications with an independent insurance adjuster who performs the same functions as an 'in-house' claims employee.") (internal citations omitted); *Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, No. Civ. A.03-4145, 2004 WL 3037947, at *2  (E.D. Pa. Dec. 30, 2004) (outside claims adjuster was agent of insurer for purposes of attorney-client privilege).

The reasoning of the above cases is sound and comports with Colorado law on this issue.  Although there is no Colorado case law directly on point, the Colorado Supreme Court has held, in the context of communications between a governmental entity's independent contractor and the entity's counsel, that such communications may still be protected by the attorney-client privilege if the information-giver is an employee, agent, or independent contractor with a significant relationship to both the entity and the transaction that is the subject of the entity's need for legal services.  *Alliance Constr. Solutions, Inc. v. Dep't of Corrections*, 54 P.3d 861, 869 (Colo. 2002).  If that requirement is met, then three additional elements must also be met for the privilege to apply: (1) the communication was made for the purpose of seeking or providing legal advice; (2) the subject matter of the communication was within the scope of the duties provided by the entity to its employee, agent, or independent contractor; and (3) the communication was treated as confidential and only disseminated to those persons with a specific need to know its contents.  *Id.* at 869-70.

An outside claims adjuster hired to conduct the factual investigation on which a coverage decision is based qualifies as an agent or independent contractor with a

significant relationship to both the insurance company and the transaction that is the subject of the insurer's need for legal services (denial of the claim). As to the three additional elements, at this point every indication is that they have been met given the relationship between the adjuster's work and the coverage decision; however, any questions regarding compliance with these elements should be resolved upon *in camera* review of the documents. Thus, plaintiffs' argument that disclosure of a communication to defendants' outside claims adjuster necessarily amounts to waiver of the attorney-client privilege is without merit.

Accordingly, defendants are ordered to produce to the Special Master for *in camera* review, within ten days of the date of this Order, the 47 documents identified in the privilege log attached to defendants' objections. After reviewing the documents, the Special Master can decide in accordance with this Order which of the documents must be produced and which are privileged.

### B.   Deposition Questions

The Special Master correctly concluded that questions related to the existence of attorney-client communications—as opposed to the content thereof—or the fact of involvement of an attorney are not within the scope of the attorney-client or work-product privilege. Special Master's Order at 3. And under *National Farmers*, questions relating to counsel's participation as a fact finder or claims adjuster, or questions aimed merely at determining whether counsel's communications involved factual issues as opposed to legal advice, also are not privileged. *Id.* at 4. Thus, to the extent a witness refused to answer such a question on privilege grounds, plaintiffs are entitled to an

answer. Defendants are ordered to specify to plaintiffs, within ten days of this order, the specific questions which plaintiffs believe a deponent wrongfully refused to answer on privilege grounds and the basis for their contention that the privilege does not apply. Plaintiffs shall be permitted to further depose such witnesses within the limits provided in this Order. Any further disputes that arise as to the scheduling or scope of additional depositions shall be addressed to the Special Master.

**V.     CONCLUSION**

For the foregoing reasons, the Special Master's Order (Dkt. # 83) is AFFIRMED IN PART in accordance with this Order. It is hereby ORDERED that:

1. Plaintiffs' Motion to Compel Rimkus Documents for *In Camera* Review on (Dkt. # 52), is GRANTED IN PART;

2. Plaintiffs' Supplemental Motion to Compel and Brief in Support (Dkt. # 64) is GRANTED IN PART;

3. Defendants are ordered to produce to the Special Master for *in camera* review, within ten days of the date of this Order, the 47 documents identified in the privilege log attached to defendants' objections;

4. Plaintiffs are ordered to specify to defendants, within ten days of the date of this order, the specific questions which plaintiffs believe a deponent wrongfully refused to answer on privilege grounds, and plaintiffs shall be permitted to further depose such witnesses within the limits provided in this Order; and

5. Any further disputes that arise as to the scheduling or scope of additional depositions shall be addressed to the Special Master.

DATED:  April 12, 2007                                BY THE COURT:

                                                                         *s/ Lewis T. Babcock*

                                                                         _____
                                                                         Phillip S. Figa
                                                                         United States District Judge

10